Nott, J.,
delivered the opinion of the court.
This is an action brought to recover #5,042, damages suffered by the claimant by reason of the violation of a contract for the manufacture and sale of from ten to twelve millions of bricks. The facts are as follows:
In 1857, Captain M, C. Meigs, of the United States corps of engi *350 neers, and engineer in charge of the Washington Aqueduct, advertised for proposals “ forfurnishing ten millions of brichs for the Washington Aqueduct.” The claimant, in response, offered “ to contract for furnishing for the Washington Aqueduct ten to twelve millions of bricks, at the prices hereinafter stated, and in the times and quantities of the following table, and to complete the delivery of said bricks in conformity to the terms of the preceding specifications, and upon the terms and conditions of the contract which he may hereafter subscribe, in the form of a copy of which has been shown to and read by him, viz:
“ For bricks, per thousand, delivered on boats, to be furnished by the United States, at the brick-yard landing on the Chesapeake and Ohio canal, $S 25.
400, 000 to be delivered by 21st of June, 1857.
600, 000 more, delivered by 21st of July, 1857.
S00, 000 more, delivered by 21st of August, 1857.
800, 000 more, delivered by 21st of September, 1857.
800, 000 more, delivered by 21st of October, 1857.
800, 000 more, delivered by 21st of November, 1857.
800, 000 more, delivered by 21st of December, 1857.
Total, 5, 000, 000, to be delivered by 21st of December, 1857.
“ And any quantity, not exceeding seven millions, that may be required in the year 1858, at the rate of one million per month, commencing with the first million on the 1st day of May, 1858, in the same manner and at the same price, viz : $S 25 per thousand.”
The offer of the claimant was accepted, and on the 26th May, 1857, a formal contract, in writing and under seal, was executed. By this contract it was expressly agreed that the brick-yard, machinery, and appliances for making brick, prepared by the late contractors for brick for the aqueduct, and surrendered by them to the United States, will be placed at the service of the contractors for their use in making bricks under these specifications.
But it was provided, nevertheless, that in case the party of the second part shall at any time be of opinion that this contract is not duly complied with by the party of the first part, or that it is not in due progress of execution, or that the party of the first partis irregular or negligent — in such case he shall be authorized to declare this contract forfeited, and thereupon the same shall become null and void, and the United States shall thereupon be exonerated from every obligation thence *351 arising, and the reserved per centage on the contract price, as well as all the materials furnished, upon which no estimate or payment may have been made, shall be forfeited to and become the right and property of the United States ; and the party of the second part may thereafter agree with any other person for the execution of the remainder of the work, and the 'party of the first part shall have no appeal from the opinion and decision aforesaid, and he hereby releases all right to except to or question the same in any place or under any circumstances tvhatever ; but the party of the first part shall remain liable to the party of the second part for the damages occasioned to him by the said failure or refusal; and it is further agreed between the two parties that, in order to secure the punctual performance of the covenants above made by the party of the first part, and to indemnify and protect the party of the second part from loss in case of default and forfeiture of this contract, the said party of the second part shall be authorized to retain in his hands until the completion of the contract, ten per cent, on the amount of moneys at any time due to the said party of the first part.
“ It is further agreed that, in case of the death, resignation, removal, or absence of any engineer, the United States, by its' proper officers, may depute any other engineer to act in his place.”
Such being the contract, it is proven that the claimant delivered and the defendants accepted bricks during every month of the two years for which the contract was to run. It is also proven that the amount of bricks so delivered and accepted fell very far short of the amount which the claimant agreed to manufacture, and that, at the termination of this period, he had remaining, manufactured, 300,000 bricks, ready for delivery, but that the defendants, instead of accepting the same, declared the contract violated, and the ten per cent., which had been reserved, forfeited.
The claimant against this action of Captain Meigs alleges a violation of the contract on the part of the defendants, in depriving him of a part of the brick-yard, and thereby preventing him from erecting two additional machines, and thus fulfilling his agreement as to quantity. He also insists that there were certain '■‘precedent duties ” to be performed by the defendants, and that, among others, they were bound to “first present boats at the bricle-yard, and then notify the claimant of their willingness and readiness to receive the brick.” But the evidence fails to satisfy us that there was such default on the part of the defendants, and such freedom from default on the part of the claimant as to entitle him to recover for the bricks which he did not make.
But it does not follow that the claimant is not to recover the profits *352 on the bricks which he did make and deliver to the defendants. The rule as to the waiver of a forfeiture is as applicable to the government as to other contractors, and has been before this recognized and applied in this court, (Lester v. Reddington’s case, 1 C. Cls. R., p. 52.) It is needless to say, that under that rule, an acceptance by the defendants of the article manufactured during every month of the entire period for which the contract existed, precludes them from also insisting that during this entire period the claimant was also incurring and suffering a forfeiture. There is, indeed, a provision in the contract which constitutes the engineer representing the government the supreme and absolute judge of the claimant’s performance, with power to abrogate the contract, in his discretion, and with a provision that it shall become null and void, if thus declared forfeited, and that the claimant “ shall have no appeal from, the opinion and decision” of the engineer, nor the right “ to except to or question the same in any place or under ■any circumstances whatever.” There are agreements to abide by the decision of a third person, reciprocally obligatory upon both the parties, which are always to be upheld as an agreement that wagons to be manufactured shall be examined and approved by a certain inspector, (Albert Brown’s case, 1 C. Cls. B., p. 307,) or that the title to an estate to be conveyed shall be approved by the Attorney General, (■Merchant’s Exchange Go’s case, 1 C. Cls. B., p. 332,) but a decision under this contract by the referee, made after the contract has expired, and when the rights of the parties have become settled and fixed thereunder, cannot preclude them from appealing to a court of justice.
We therefore think that the claimant should recover the ten per cent, which has been withheld by the defendants, and that he should also recover his losses on the 300,000 bricks remaining in his hands at the expiration of the contract.
The judgment of the court is that the claimant recover $2;913 67, being the balance of the ten per cent, retained, and also $1,575 25, being-his losses on 300,000 bricks, amounting, in the aggregate, to the sum of $4,488 92.